**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**


| | | |
|---|---|---|
| **RHONDA ELLIOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 1:14CV163NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the
final decision of the Commissioner denying the application of Rhonda Elliott
(Plaintiff) for Supplemental Security Income (SSI), under Title XVI of the Social
Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the
Complaint. (Doc. 13). Defendant has filed a brief in support of the Answer. (Doc.
18). The parties have consented to the jurisdiction of the undersigned United
States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

## I.
## PROCEDURAL HISTORY

On June 20, 2011, Plaintiff filed an application for SSI, alleging a disability
onset date of December 19, 2007. (Tr. 11, 172-77). Her application was denied,

and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 11, 55-56, 63-66). After a hearing, the ALJ denied Plaintiff's application, by decision dated August 15, 2013. (Tr. 11-22, 27-54). The Appeals Council denied Plaintiff's request for review, on September 16, 2014. (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page

v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other

jobs in the national economy that can be performed by a person with the claimant's RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).  In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by

substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged she became disabled at age thirty-eight, based on back pain, bipolar disorder, manic depressive disorder, psychotic behavior, Hepatitis C, and fibromyalgia.  (Tr. 172-73, 197).  At the administrative hearing, Plaintiff testified that she had a sixth-grade education; that she felt depressed and, twice a month, had crying spells which lasted a week; that she had anxiety which caused her heart to race; that she had anxiety twice a week; and that she could not sit or stand for long periods of time due to her back pain.  (Tr. 33,35-39).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 20, 2011, her application date; that she had the severe impairments of depression and degenerative disc disease; that she did not have an impairment or

combination of impairments which met or medically equaled a listed impairment; and that she had the RFC to perform the full range of light work except that she was able to understand, remember, and carry out simple instructions in a routine work setting involving few changes in work routine throughout the workday and that her interaction with supervisors, co-workers, and the public could be no more than occasional; that Plaintiff had no past relevant work; that, based on Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled.

Plaintiff contends that the ALJ's decision is not based on substantial evidence because: the ALJ failed to properly consider Plaintiff's credibility; the ALJ failed to properly consider the medical opinions of record; and the ALJ failed to properly consider Plaintiff's Global Assessment of Functioning (GAF) scores.[1]

---

[1] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has

For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's determination that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## A.     Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).   As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

---

some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

To the extent that the ALJ did not specifically cite <u>Polaski</u>, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. <u>Randolph v. Barnhart</u>, 386 F.3d 835, 842 (8th Cir. 2004); <u>Wheeler v. Apfel</u>, 224 F.3d 891, 895 n.3 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000). <u>See also</u> <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered."); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003). <u>See also</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010); <u>Cox v.</u>

Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's daily activities. Plaintiff testified at the hearing that that she cared for her large dogs, except for bathing them; that her fiancé helped her with the dishes and the laundry because she could not do those things; that her fiancé did the grocery shopping, but that she sometimes went with him when he did so; and that, when she went to the store, she could walk down the aisles. (Tr. 41-42). Also, Plaintiff told Dr. Wood that she helped with some household chores and with meal preparation, and that she had "a few friends" with whom she interacted on a regular basis. (Tr. 384).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Wright v. Colvin, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."); McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his

daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"); Buckner v. Astrue, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where plaintiff engaged in a daily activities that were inconsistent with his allegations). See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends). Moreover, to the extent Plaintiff urges the court to reweigh the evidence regarding Plaintiff's daily activities and draw its own conclusion in this regard, it is not the function of the court to do so. See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations

omitted).  In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility.  (Tr. 17-20).

Second the ALJ considered Plaintiff's poor work history.  (Tr. 17).  Plaintiff argues that the ALJ should not have done so.  (Doc. 13 at 15).  Indeed, the record reflects that Plaintiff had no earnings from 2004 through 2012.  (Tr. 183).  A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments.  See Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980).  For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record.  See Wright v. Colvin, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where the ALJ found claimant's work history troubling for two reasons; claimant said he had not worked since 2008, but the onset of his disability was in 2010, and claimant did not report any earnings for the tax years of 2006, 2007, and 2008, which was inconsistent with his reported work history that did not end until 2008"); Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (holding that the ALJ did not err in evaluating claimant's credibility in finding that his "sporadic work history prior to his alleged disability date" indicated that he was not strongly motivated to engage in meaningful productive activity and that this weighed against the claimant's credibility regarding his reasons for not working) (internal quotation marks omitted); Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (ALJ may properly

consider claimant had not worked for several years before filing SSI application);

Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Fredrickson v.

Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly found claimant not

credible due in part to his sporadic work record reflecting relatively low earnings

and multiple years with no reported earnings); Pena v. Chater, 76 F.3d 906, 908

(8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). As such, the

court finds that the ALJ properly considered Plaintiff's work history.

Second, the ALJ considered that, although Plaintiff testified that she had not

had a job since her application date, in paperwork she submitted in support of her

application, Plaintiff "acknowledged that she had worked 2 or 3 weeks cleaning

houses, doing things such as vacuuming, dusting, cleaning bathrooms, and doing

dishes and laundry." (Tr. 17, 244). Consistent with the case law and Regulations,

the ALJ considered that although this work was not performed long enough to be

considered past relevant work or substantial gainful activity, it was evidence that

Plaintiff "believe[d] that there [was] some kind of work she [was] capable of

doing." (Tr. 17). See 20 C.F.R. § 404.1574(a) (if a claimant has worked, the

Commissioner should take this into consideration when determining if the claimant

is able to engage in substantial gainful activity); Goff, 421 F.3d at 792 ("Working

generally demonstrates an ability to perform a substantial gainful activity.");

Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are

inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."). See also Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain.").

Third, in regard to Plaintiff's allegations of disabling back pain, the ALJ considered the objective medical evidence. (Tr. 17). See Social Security Ruling (SSR) 06-7p(4), 1996 WL 374186, at *1 (July 2, 1996) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence," although disability determination "cannot be made solely on the basis of objective medical evidence."). Indeed, a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities to the extent that [her] alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." Id. at *2.

As considered by the ALJ, on December 30, 2011, Plaintiff presented to the emergency room with abdominal pain. On examination, Plaintiff was positive for abdominal pain, nausea; she was positive for fatigue and malaise; all other systems were negative; and she had full range of motion (ROM). (Tr. 421-22).

On April 3, 2012, Plaintiff saw Thymois Lambrou, M.D., for leg pain, and this doctor prescribed medication.[2] (Tr. 463). On April 11, 2012, when Plaintiff was admitted to the hospital for complaints of chest pain, her other systems were reviewed and were negative; she had no spinal tenderness; Plaintiff's extremities had equal pulses and no edema; her motor strength was "5/5 in all extremities"; her "sensory was grossly intact"; and she had normal gait. (Tr. 410).

When Plaintiff was seen by Nurse Practitioner Jo Crabtree, on May 30, 2013, for reasons unrelated to her application for Social Security benefits, Plaintiff reported that she had back pain which was "getting increasingly worse," and that she ached "all over." On examination, Plaintiff had no weakness, numbness, or tingling; her back had normal curvature and no tenderness; and she had no edema in her extremities and normal skin. (Tr. 469-70).

Fourth, in regard to Plaintiff's allegations of a mental impairment, the ALJ considered the objective medical evidence. (Tr. 17-19). See SSR 06-7p(4). As considered by the ALJ, Plaintiff saw Dr. Wood, on September 7, 2011, for a psychological evaluation. (Tr. 18). Dr. Wood noted that, in addition to Plaintiff's "difficulties with mood disturbance she [also] [had] alcohol and drug related problems"; that she continued to use alcohol "to the point where she [] experience[d] black out[s] about once a month"; and she had episodes during

_____

[2] Dr. Lambrou's notes of this and other dates are generally not legible.

which she was "somewhat impulsive and [] exhibited unstable behavior." Pursuant to a mental status examination and his administering the Folstein Mini Mental Status Exam, Dr. Wood reported that Plaintiff's eye contact was good; that her speech was clear and discernable; that her organization was "generally logical and coherent"; that her mood and affect were appropriate and congruent; that she was cooperative and agreeable; that she was oriented; that she had no difficulty with immediate recall but "on the delayed recall task could only recall two of the three words she'd been asked to remember"; that no problems were noted on the language portion of the exam; and that Plaintiff had no mental trends involving delusions or hallucinations. (Tr. 384-85).

Dr. Wood concluded that that Plaintiff was capable of understanding, following, and remembering simple instructions; that she had adequate ability to interact socially and to sustain concentration and maintain persistence on simple tasks; that Plaintiff's ability to manage her own financial resources was "questionable"; that it would be best for Plaintiff not to be responsible for her financial matters "until she [could] enter into some form of treatment and maintain a period of sobriety"; and that Plaintiff had a GAF of 55, which indicates moderate symptoms and limitations. Dr. Wood also concluded that Plaintiff might benefit from supportive psychotherapy; that Plaintiff should be involved in a substance abuse program; and that she would benefit from abstaining from alcohol use

because "her abuse of alcohol and the abuse of other substances [had] probably led to some instability of her mood."[3] (Tr. 384-85). See n.1.

On October 27, 2011, Plaintiff was admitted to the hospital after feeling like she was having a nervous breakdown. Upon Plaintiff's admission, her GAF was 25. Upon discharge, Plaintiff was alert and oriented; she was not in any acute

---

[3] In 1996, Congress eliminated alcoholism or drug addiction as a basis for obtaining social security benefits. See Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). "An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). The Regulations set out a two-step process in cases involving evidence of substance abuse. First, the ALJ must determine if the claimant symptoms, regardless of cause, constitute a disability. Kluesner, 607 F.3d at 537; 20 C.F.R. § 416.935(a). If the ALJ finds a disability and evidence of substance abuse, *the next step is to determine whether the disability would exist in the absence of the substance abuse*. Kluesner, 607 F.3d at 537. As such, the ALJ's finding of disability "is, in effect, a condition precedent" to applying the special rule on alcoholism and drug addiction." Frank S. Bloch, Bloch on Social Security § 3.39 (2003) (cited approvingly in Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003)). See also Fastner v. Barnhart, 324 F.3d 981, 986 (8th Cir. 2003) ("Generally, a determination under . . . § 416.935(b) is only necessary if the ALJ has found that the sum of that individual's impairments would otherwise amount to a finding of disability.").

"An individual is not considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "[T]he relevant inquiry is 'whether [the Commissioner] would still find you disabled if you stopped using drugs or alcohol.'" Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (quoting 20 C.F.R. § 404.1535 (disability) and 20 C.F.R. § 416.935 (SSI)).

Also, as discussed above, the Eighth Circuit has stated that "[i]mpairments that are controllable or amenable to treatment do not support a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).

distress; in regard to her mood, Plaintiff said she was "doing really great"; she interacted appropriately; her insight was fair; she was not actively psychotic; her judgment was fair to good; and she had a GAF of 55, indicating moderate symptoms. (Tr. 427-31).

On December 31, 2011, when Plaintiff presented for abdominal pain, it was noted that her behavior and mood were anxious. (Tr. 422). On March 5, 2012, when she presented complaining of anxiety, Dr. Lambrou prescribed medication. (Tr. 463). On April 11, 2012, when Plaintiff was admitted to the hospital for complaints of chest pain, she was alert and oriented, and her affect was within normal limits. (Tr. 410). On May 24, 2012, when Plaintiff presented crying and complaining of depression, Dr. Lambrou adjusted Plaintiff's medications. (Tr. 462). When Plaintiff returned, on June 21, 2012, Dr. Lambrou reported that Plaintiff felt and appeared better. (Tr. 461). When Nurse Crabtree saw Plaintiff, on April 30, 2013, she reported that Plaintiff did not have anxiety or depression. (Tr. 470). On August 31, 2013, when Plaintiff was out of her Abilify, Ambien, and Xanax, Carrie Carda, M.D., reported that Plaintiff said she was "having a considerable amount of anxiety." (Tr. 455).

Fifth, the ALJ considered that, in regard to Plaintiff's depression, "the longitudinal history support[ed] a finding of life stressors and traumatic events that [had] contributed to this diagnosis." (Tr. 18). In this regard, the ALJ considered

that two doctors reported that Plaintiff's depression was 'induced by her substance abuse." (Tr. 18). In particular, the ALJ considered that Dr. Wood opined that substance abuse contributed to some of the instability in Plaintiff's mood. (Tr. 18, 385-86). The court notes that situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations); Shipley v. Astrue, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (situational depression is not disabling).

Sixth, the ALJ considered that Plaintiff's being found disabled for purposes of her receiving Medicaid did not establish that she was disabled for purposes of Social Security. (Tr. 19). Findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision. Morrison v. Apfel,146 F.3d 625, 628 (8th Cir. 1998). Indeed, an "ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504." Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006) (quoting Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam) ("There is no support for [the claimant]'s contention that his sixty-percent

service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.").

Seventh, the ALJ considered that Plaintiff's depression improved with medication compliance and abstinence. (Tr. 18). See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling). Notably, as discussed above, Dr. Wood reported, in September 2011, that Plaintiff might benefit from "some form of supportive psychotherapy to assist her with learning how to modulate her emotions, to think things through, and to develop a more assertive and balanced stances toward her present life circumstances." Additionally, Dr. Wood reported that Plaintiff should be enrolled in a substance abuse program, and that she would benefit from abstaining from the use of alcohol, as her abuse of alcohol and the abuse of other substances "probably led to some instability of her mood." (Tr. 386). Further, although Plaintiff had a GAF of 25 when she was admitted to the hospital on October 27, 2011, after treatment and upon her November 2, 2011 discharge, Plaintiff's GAF was 55. (Tr. 427). Also, as stated above, on June 21, 2012, Dr. Lambrou reported that Plaintiff felt and appeared better, after her medication had been adjusted. (Tr. 461).

Eighth, the court notes that Plaintiff had generally conservative treatment, and, as discussed above in regard to the objective medical evidence, when Plaintiff received treatment, it was often not for conditions which she claims are disabling.

(Tr. 17-18). Conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

## B.    Opinion Evidence:

### 1.    Nurse Crabtree's Opinion:

Nurse Crabtree opined, in a Medical Source Statement – Mental, dated July 2, 2013, that Plaintiff was not significantly limited in regard to remembering locations and work-like procedures and understanding and remembering very short and simple instructions; that she was moderately limited in regard to understanding and remembering detailed instructions; that, in the area of concentration and pace, Plaintiff was moderately limited in regard to performing activities within a schedule, maintaining regular attendance, and being punctual and in regard to completing a normal workday and workweek without interruption from her psychological symptoms and performing at a consistent pace; that, in all other areas of concentration and pace, Plaintiff was not significantly limited; that, in the area of social interaction, Plaintiff was moderately limited in regard to the ability

to accept instructions and respond appropriately to criticism from supervisors; that, in all other aspects of social interaction, Plaintiff was not significantly limited; that, in the area of adaptation, Plaintiff was markedly limited in the ability to travel to unfamiliar places or use public transportation; and that, in all other aspects of adaptation, Plaintiff was not significantly limited. (Tr. 474-75).

Nurse Crabtree also opined, in a Medical Source Statement – Physical, dated July 3, 2013, that Plaintiff could frequently lift and/or carry five pounds; that she could occasionally lift and/or carry ten pounds; that she could continuously stand and/or walk 15 minutes; that, in an 8-hour workday, Plaintiff could stand and/or walk less than 1 hour; that Plaintiff could continuously sit for 15 minutes; that, in an 8-hour workday, Plaintiff could sit less than 1 hour; that Plaintiff was limited in her ability to push and pull due to chronic back pain; that Plaintiff could never stoop, kneel, crouch, and crawl; that she could occasionally climb, balance, reach, and handle; that she could frequently finger, feel, see, speak, and hear; that she had to avoid all exposure to environmental facts with the exception of vibration, for which she had to avoid moderate exposure; that, in an 8-hour day, Plaintiff needed to lie down or recline to alleviate her symptoms 2 to 3 times for 15 to 20 minutes; and that Plaintiff's anti-anxiety medications caused her drowsiness. (Tr. 477-78).

The ALJ gave significant weight to Nurse Crabtree's opinion regarding Plaintiff's mental limitations, and limited weight regarding Plaintiff's physical

limitations. (Tr. 19). Plaintiff contends that the ALJ failed to give proper weight to Nurse Crabtree's opinion. (Doc. 13 at 13).

First, in regard to the weight to be given Nurse Crabtree's opinion, the ALJ considered that she was a nurse practitioner and, therefore, not an acceptable medical source. Nonetheless, the ALJ noted that Nurse Crabtree's opinion should be considered pursuant to SSR 06-03p. (Tr. 19). Consistent with the ALJ's opinion, a nurse practitioner under Social Security Regulations, is not an "acceptable medical source" who can be considered a "treating source." 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a); SSR 06–03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006). Nurse practitioners' opinions are considered an "other" medical source of evidence. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Evidence from other medical sources is evaluated based on various factors including the examining or treatment relationship, length of the relationship, frequency of examination, supportability, and consistency. 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ has "more discretion" when analyzing "other" sources - such as a nurse practitioner - and is "permitted to consider any inconsistencies found within the record." 20 C.F.R. § 416.913(a) and (d)(3); Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006).

Second, despite Plaintiff's arguing to the contrary, when determining the weight to be given Nurse Crabtree's opinion, the ALJ considered the extent to

which her opinion was consistent with records from acceptable medical sources. In particular, the ALJ considered that Nurse Crabtree's opinion regarding Plaintiff's mental impairments was consistent with the finding of Dr. Wood and the preponderance of evidence. (Tr. 19). See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.").

Third, upon finding that limited weight should be given to Nurse Crabtree's opinion regarding Plaintiff's physical impairments, the ALJ considered that Nurse Crabtree had only treated Plaintiff since April 2013 and had only seen her twice since that time, see 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."); Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations.") (internal citation omitted); that Nurse Crabtree's opinion was not substantiated by the objective medical evidence, see Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014) (finding ALJ properly discounted treating physician's opinion where it was inconsistent with the objective medical

evidence as a whole); <u>Turpin v. Colvin</u>, 750 F.3d 989, 993 (8th Cir. 2014) (treating doctor's opinion not controlling where other medical assessments are support by better or more thorough evidence); <u>Tilley v. Astrue</u>, 580 F.3d 675, 679 (8th Cir. 2009); and that Nurse Crabtree's opinion was not well supported by her own progress notes, <u>see</u> <u>Cline</u>, 771 F.3d at 1103 (finding ALJ properly discounted treating physician's opinion where it was not supported by the treating physician's own physical examination of the claimant); <u>Hacker v. Barnhart</u>, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Fourth, to the extent the ALJ did not give Nurse Crabtree's opinion controlling weight, she offered her opinion by making checkmarks on forms. <u>See Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010) (concluding the Commissioner "properly discounted" a treating physician's opinion that "consist[ed] of three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration").

Fifth, the ALJ clearly articulated the reasons for the weight he gave Nurse Crabtree's opinions. SSR 96-2p, at *5 (clarifying that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical

opinion(s)"); <u>Cline v. Colvin</u>, 771 F.3d 1098, 1103 (8th Cir. 2014) ("Whether granting 'a treating physician's opinion substantial or little weight,' <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1013 (8th Cir. 2000), the commissioner must 'always give good reasons . . . for the weight' she gives, 20 C.F.R. § 416.927(d)(2).").

Sixth, to the extent Plaintiff contends that the ALJ failed to address every regulatory factor when evaluating the weight to be given Nurse Crabtree's opinion, the ALJ was not required to do so. <u>See</u> <u>Samons v. Apfel</u>, 497 F.3d 813, 820 (8th Cir. 2007) (holding that in the credibility analysis the ALJ need not explicitly discuss each of the regulatory factors but must only acknowledge and consider the factors) (citation omitted).

Seventh, to the extent Plaintiff contends that it was inconsistent for the ALJ to adopt only portions of Nurse Crabtree's opinions, in formulating a claimant's RFC, the "ALJ is not required to rely entirely on a particular [medical] opinion or choose between the opinions of any of the claimant's [treating sources]." <u>Martise v. Astrue</u>, 641 F.3d 909, 927 (8th Cir. 2011).

Eighth, to the extent Plaintiff argues that the ALJ was obligated to adopt all of the more restrictive or moderate limitations imposed by Nurse Crabtree (Doc. 13 at 12-13), as stated above, Nurse Crabtree offered her opinion by checking boxes on a form, and an ALJ is not required to adopt the opinion of any one source in its entirety, <u>see</u> <u>Martise v. Astrue</u>, 641 F.3d 909, 927 (8th Cir. 2011). In conclusion,

the court finds that the ALJ gave proper weight to Nurse Crabtree's opinion, and that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

2.    *John Wood, Psy. D.:*

As discussed above in regard to Plaintiff's credibility, Dr. Wood conducted a consultative examination of Plaintiff on September 7, 2011.  As considered by the ALJ, after administering the Folstein Mini Mental Status Exam, Dr. Wood concluded, among other things, that Plaintiff's substance abuse contributed to some of the instability of her mood.  Dr. Wood also assessed Plaintiff's GAF as 55, indicating moderate symptoms and limitations, and found Plaintiff was capable of understanding, remembering, and following simple instructions; that she had had adequate ability to sustain concentration and maintain persistence on simple tasks; and that she had adequate ability to interact socially.  (Tr. 384-86).  The ALJ gave Dr. Wood's opinion "considerable weight" upon his formulating Plaintiff's RFC. (Tr. 18).

To the extent Plaintiff contends that the ALJ gave improper weight to Dr. Wood's opinion, Dr. Wood examined Plaintiff and rendered his opinion after conducting objective testing.  See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (holding that a "physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal citation and quotation omitted). Further, as considered by the ALJ, Dr. Wood is a specialist in the area in which he rendered his opinion. See Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist."); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010) (ALJ properly did not give controlling weight to opinion of psychologist regarding claimant's physical limitations because opinion was beyond his area of his expertise).

Finally, as considered by the ALJ, Dr. Wood's opinion was consistent with the preponderance of the evidence that Plaintiff's primary impairments were drug and alcohol abuse. See Tilley, 580 F.3d at 679. Notably, Plaintiff does not allege disability due to substance abuse; Dr. Wood suggested her symptoms would improve with treatment for substance abuse; and, as discussed below, Dr. Carda opined that Plaintiff's symptoms were caused or exacerbated by her substance abuse and that Plaintiff's limitations from her depression would not be disabling if Plaintiff stopped her substance abuse. (Tr. 480). See n.1 (claimant is not disabled if alcoholism or drug addiction would be a contributing factor material to disability determination). As such, the court finds that the ALJ gave proper weight to Dr.

Wood's opinion, and that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

3.  *Carrie Carda, M.D.:*

Dr. Carda completed an Alcoholism and Drug Addiction Evaluation, on July 10, 2013, in which she opined that alcoholism and drug addiction were not the only impairments exhibited by Plaintiff; that Plaintiff also had depression; that Plaintiff's drug or alcohol use were either caused by or exacerbated by her drug or alcohol use; that the limitations from Plaintiff's other impairments would not be disabling if she were to stop the drug and alcohol abuse; and that substance abuse was "a major issue" for Plaintiff. The ALJ gave some weight to Dr. Carda's opinion, but upon doing so noted that Dr. Carda did not say much more than that Plaintiff's "depression [was] exacerbated by substance abuse and would not be disabling if her drug and alcohol use were to stop."

To the extent that Plaintiff contends the ALJ gave improper weight to Dr. Carda's opinion, as considered by the ALJ, Dr. Carda was Plaintiff's treating gynecologist, but her opinion was consistent with Dr. Wood's opinion and other evidence of record. (Tr. 18). See Tilley, 580 F.3d at 679. Further, upon determining that some weight should be given to Dr. Carda's opinion, the ALJ considered that it was conclusory and provided little substance. See Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879

F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) (treating doctor's opinion not controlling where other medical assessments are support by better or more thorough evidence). As such, the court finds that the ALJ gave proper weight to Dr. Carda's opinion, and that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

2.   *Opinions of Dr. Spence, R. Mitgang, M.D., Tawnya Brode, Psy. D.:*

Dr. Spence reviewed Plaintiff's medical records as well as other evidence of record, and, in a Mental RFC Assessment, dated October 4, 2011, opined that Plaintiff had no more than moderate limitations in the areas of consideration; that she was not significantly limited in regard to remembering locations and work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, performing activities within a schedule, sustaining an ordinary routine without special supervision, making simple work-related decisions, asking simple questions, and maintaining socially appropriate behavior; and that she was not significantly limited in all areas of

adaptation. Dr. Spence concluded that Plaintiff could perform simple repetitive tasks, but would do best in a low stress, low public environment. (Tr. 387-89). Dr. Spence also opined that Plaintiff had mild limitations in regard to activities of daily living, moderate limitations in maintaining social functioning and concentration, persistence, or pace, and no limitations in regard to repeated episodes of decompensation. (Tr. 399-400).

On May 11, 2012, Dr. Mitgang affirmed the findings of Mary White, a medical consultant, as reported in an October 3, 2011 Physical RFC Assessment. (Tr. 403). The October 2011 Physical RFC Assessment indicated that Plaintiff did not have any exertional limitations; that Plaintiff could only occasionally climb, balance, or stoop; and that Plaintiff should avoid concentrated exposure to hazards. (Tr. 57-61).

Also, on May 11, 2012, Dr. Bode reviewed the record, including Plaintiff's medical records, noted that, while she was incarcerated and substance free, Plaintiff did well on her medications, and "affirm[ed] the prior determination." (Tr. 403).

The ALJ considered the opinions of Dr. Brode, Dr. Spence, and Dr. Mitgang, and gave limited weight to Dr. Mitgang's opinion, and "significant weight" to the opinions of Dr. Spence and Dr. Brode. (Tr. 19). To the extent the ALJ gave any weight to the opinions of these doctors and to the extent Plaintiff

contends that the ALJ gave improper weight to the opinions of these doctors, as State agency medical consultants Dr. Brode, Dr. Spence, and Dr. Mitgang are highly qualified experts in Social Security disability evaluation, and, therefore, their findings must be considered as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Moreover, the ALJ only considered the opinions of Dr. Brode, Dr. Spence, and Dr. Mitgang to the extent their opinions were consistent with the evidence of record and opinion of Dr. Wood regarding Plaintiff's mental limitations. Kamann v. Colvin, 721 F.3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments); Casey v. Astrue, 502 F.3d 687, 694 (8th Cir. 2007) (finding ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). In conclusion, the court finds that the ALJ gave proper weight to the opinions of Dr. Brode, Dr. Spence, and Dr. Mitgang, and that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

## C.  Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v.

Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and

because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

As stated above, the ALJ found that Plaintiff had the RFC to perform the full range of light work except that she was able to understand, remember, and carry out simple instructions in a routine work setting involving few changes in work routine throughout the workday and that her interaction with supervisors, co-workers, and the public could be no more than occasional. The Regulations, 20 C.F.R. § 416.967 define light work as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Upon determining Plaintiff's RFC, the ALJ identified Plaintiff's functional limitations, and then assessed her work-related abilities on a function-by-function basis. See Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). As part of this analysis, the ALJ considered Plaintiff's GAF scores of record. As discussed above, when Plaintiff was admitted to the hospital in October 2011, her GAF was

25 and, upon discharge, it was 55, and in September 2011, Dr. Wood assigned Plaintiff a GAF of 55.

The ALJ considered that GAF scores are "only a snapshot of what is going on in an individual's life at the moment in time that it has been assigned." Thus, the ALJ considered Plaintiff's GAF scores over time and in view of the longitudinal evidence. The ALJ concluded that Plaintiff's GAF scores indicated mild to moderate symptoms and limitations in functioning, and gave partial weight to Plaintiff's GAF scores, to the extent they were consistent with evidence of record which addressed Plaintiff's ability to function. (Tr. 18).

To the extent Plaintiff contends the ALJ improperly took into account her GAF scores, the ALJ's doing so was consistent with the case law and Regulations. Indeed, despite the Commissioner's declining to endorse GAF scores for purposes of determining disability, GAF scores may still be used to assist in assessing the level of a claimant's functioning. Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [RFC], it is not essential to the RFC's accuracy). Further, the ALJ only considered Plaintiff's GAF scores to the extent they were consistent with the evidence of record. See Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013) (GAF

scores may be considered by ALJ when considering weight to be given treating doctor's opinion and whether doctor's opinion is inconsistent with treatment record; doctor's treatment notes did not reflect episodes of decompensation although doctor opined claimant suffered from four or more extended episodes of decompensation).  Significantly, in regard to Plaintiff's November 2011 GAF scores, the improvement of her score from 25 to 55 indicated that her symptoms improved with treatment.  See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling). Moreover, the ALJ gave good reasons for the weight he gave to Plaintiff's GAF scores.  As such, the court finds that the ALJ gave proper weight to Plaintiff's GAF scores and that the ALJ's decision, in this regard is based on substantial evidence and is consistent with the Regulations and case law.  In addition to Plaintiff's GAF scores, as discussed above, the ALJ addressed Plaintiff's medical records in methodical detail upon determining her functional limitations.  Although Plaintiff suggests that the ALJ did not provide sufficient explanations and cite specific evidence for every aspect of Plaintiff's RFC, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered, and, in any case, the ALJ was not required to discuss every piece of evidence in his opinion.  See Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and

fairly, an ALJ is not required to discuss every piece of evidence submitted . . . [and] [a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted).

Further, upon determining Plaintiff's RFC, the ALJ considered Plaintiff's limitations to the extent he found them credible.  See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").  Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints were not entirely credible.  The court has found, above, that the ALJ's credibility determination is based on substantial evidence.

Finally, upon determining Plaintiff's RFC the ALJ evaluated the record as a whole.  See Tucker, 363 F.3d at 783.  In conclusion, the court finds that the ALJ considered the credible evidence of record and the record as a whole when determining Plaintiff's RFC, and that the ALJ's RFC determination is based on substantial evidence and is consistent with the Regulations and case law.  See Lauer, 245 F.3d at 703-704.

After determining Plaintiff's RFC, the ALJ posed a hypothetical to a VE which described a person of Plaintiff's age and with her work experience, education, and RFC.  See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's

hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded.").

The VE responded that the hypothetical person could work as a cleaner/housekeeper, collator operator, and press operator; that these jobs existed in substantial numbers in the national economy; and that his testimony was consistent with the Dictionary of Occupational Titles (DOT). (Tr. 48-49). Based on the VE's testimony, the ALJ found Plaintiff not disabled. Indeed, the ALJ properly relied on the VE's testimony given that it captured the concrete consequences of Plaintiff's limitations. See Gieseke v. Colvin, 770 F.3d 1186, 1189 (8th Cir. 2014) (holding that when the hypothetical which the ALJ poses to a VE captures the concrete consequences of the claimant's deficiencies, an ALJ's reliance on the VE's testimony is proper). As such, the court finds that the ALJ's determination that Plaintiff is not disabled is based on substantial evidence and that Plaintiff's arguments to the contrary are without merit.

## V.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint (Docs. 1, 13) is **DENIED**;

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 4th day of January 2016.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE